UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Leigh Harper,

Plaintiff,

v.

White Earth Human Resources, et al,

Defendant.

Court File No. 16-cv-1797 (JRT/LIB)

**REPORT AND RECOMMENDATION**

This matter comes before the undersigned United States Magistrate Judge pursuant to a general assignment made in accordance with the provision of 28 U.S.C. § 636; and upon Defendants' Motion to Dismiss. [Docket No. 8].

Plaintiff initiated the present action on May 24, 2016, by filing her *pro se* Complaint, [Docket No. 4], in the District of North Dakota. On June 1, 2016, this case was transferred to the District of Minnesota. (Order [Docket No. 6]). On June 17, 2016, Defendant White Earth Human Resources, Defendant White Earth Education Department, and Defendant White Earth Boys and Girls Club (collectively, "Defendants") filed the present Motion to Dismiss. [Docket No. 8]. A briefing schedule was established, [Docket No. 11], and a hearing was held on August 25, 2016, [Docket No. 25], after which the matter was taken under advisement.

For the reasons discussed herein, it is recommended that the Defendants' Motion to Dismiss, [Docket No. 8], be **GRANTED.**

## I. BACKGROUND[1]

Plaintiff began working for the White Earth Boys and Girls Club on August 30, 2011. (See Plf.'s Ex. 1, [Docket No. 15-1], at 12). While employed at the White Earth Boys and Girls

[1] The present background is compiled from Plaintiff's Complaint, [Docket No. 4], and Plaintiff's statements at the motions hearing clarifying her *pro se* Complaint and the claims therein.

Club, Plaintiff began expressing concern that the White Earth Boys and Girls Club was misappropriating funds and not following national organization guidelines. (August 25, 2016, Motions Hearing, Digital Recording at 12:29–12:30 p.m.; 12:34–12:35 p.m.; Compl. [Docket No. 4]). Plaintiff alleges that her criticizing of and allegations against the White Earth Boys and Girls Club, including her letter to the national Boys and Girls Club organization alleging misappropriation of funds, lead to her being harassed, placed on an employee performance plan, and eventually terminated. (Compl. [Docket No, 4]; see August 25, 2016, Motions Hearing, Digital Recording at 12:41–12:43 p.m.). Plaintiff alleges that her termination was in retaliation for her complaining to the national Boys and Girls Club. (Compl. [Docket No. 4]).

Following her termination, Plaintiff requested to be heard in front of an administrative termination appeal board, and she was granted a time to be heard. (See Plf.'s Ex. 2. [Docket No. 15-2], at 55). Plaintiff, however, failed to appear for her hearing in front of that appeal board, and the hearing was cancelled due to her failure to appear. (See Id. at 60). Plaintiff alleges that she failed to appear at her appeal board hearing due to a "breakdown" she had which she alleges was caused by Defendant White Earth Human Resources' failure to provide Plaintiff with a copy of her personnel file. (August 25, 2016, Motions Hearing, Digital Recording at 12:23–12:24 p.m.).

White Earth Human Resources Policy 311 provides that employees who do not appear for their initial termination appeal board hearing forfeit their right to file for an appeal hearing in the Tribal Court. (Plf.'s Ex. 2. [Docket No. 15-2], at 60). Nevertheless, on October 1, 2015, Plaintiff filed an appeal of her termination in the White Earth Tribal Court. Plaintiff alleges that the case she took to the Tribal Court was not only her employment termination appeal, but that it also involved all the claims she now alleges in the present case. (August 25, 2016, Motions Hearing, Digital Recording at 12:24–12:26 p.m.). On January 11, 2016, the Tribal Court

dismissed Plaintiff's appeal of her termination to the Tribal Court due to her failure to prosecute citing to her admission that she failed to appear at her initial termination appeal board hearing.

Plaintiff alleges that unidentified, unfair delays and restrictions had been placed on her ability to get a trial in the Tribal Court. (Compl. [Docket No. 4]). Plaintiff alleges that the White Earth Tribal Court did not reply in a timely manner. (Id.).[2] Plaintiff alleges that the White Earth Tribal Court also stated that it could not handle Plaintiff's request for a jury trial. (Id. at 2).

On May 24, 2016, Plaintiff filed the present Complaint, [Docket No. 4], in this Court. Plaintiff alleges that she had to file her Complaint before the statute of limitations on her employment case ended. (August 25, 2016, Motions Hearing, Digital Recording at 12:30–12:31 p.m.).

On June 17, 2016, Defendants filed the present motion to dismiss for lack of jurisdiction. (Mot. to Dismiss [Docket No. 8]).

## II. DEFENDANTS' MOTION TO DISMISS. [DOCKET NO. 8].

Defendants move this Court for an order dismissing the present action. (Mot. to Dismiss [Docket No. 8]). Defendants argue that the present action should be dismissed because the Court lacks subject matter jurisdiction over the Defendants as each of the Defendants has sovereign immunity from suit, and that immunity to suit in this Court has not been waived as to any of Plaintiff's claims. (Mot. to Dismiss [Docket No. 8]).

In her Complaint, [Docket No. 4], Plaintiff alleged that the termination of her employment by the Defendants violated: 1) sections 102 and 103 of the Civil Rights Act; 2) sections 501 and 505 of the Rehabilitation Act of 1973; and 3) the Americans with Disabilities Act. (Id.). Plaintiff also alleged that Defendants continued to harass Plaintiff following her

[2] The Court notes that the White Earth Tribal Court is not a party in this case. Moreover, Plaintiff's pleading does not identify what precisely it is to which she alleged the White Earth Tribal Court did not reply in a timely manner.

termination by not providing her access to her personnel file in time for her termination appeal board hearing, which Plaintiff alleged was in violation of both Minnesota Statute 181.961 and in violation of 5 U.S.C. § 552a. (Id.).

Plaintiff's allegations concerning the White Earth Tribal Court appear to be the basis for her further generalized allegations that the Defendants had denied Plaintiff's equal protection and due process rights under the Indian Civil Rights Act, the Revised Constitution of the Minnesota Chippewa Tribe, the White Earth Constitution, and the Fifth and Fourteenth Amendments of the United States Constitution. (Id. at 1).

At the motions hearing, Plaintiff clarified that all of her purported claims, whether construed to be under the Civil Rights Act; the Rehabilitation Act of 1973; the Americans with Disabilities Act; Minnesota Statute 181.961; 5 U.S.C. § 552a; the Indian Civil Rights Act; the Revised Constitution of the Minnesota Chippewa Tribe; the White Earth Constitution; or the Fifth and Fourteenth Amendments of the United States Constitution, all stem from the termination of her employment by Defendants resulting from an allegedly illegal performance plan. (August 25, 2016, Motions Hearing, Digital Recording at 12:26–12:30 p.m.; 12:34–12:36 p.m.; 12:40–12:43 p.m.).

In her Complaint, Plaintiff also alleged that Defendants "are all entities within the White Earth Reservation System and the White Earth Reservation Tribal Council." (Id. at 2). At the motions hearing, Plaintiff acknowledged that each of the named Defendants was an entity or agency of the White Earth Tribal Government. (August 25, 2016, Motions Hearing, Digital Recording at 12:31–12:32 p.m.). At the motions hearing, Plaintiff further stated that she and all of her supervisors were employees of the White Earth Tribe, and that all pay, benefits and personnel functions related to their employment were administered through the White Earth

Human Resources department. (August 25, 2016, Motions Hearing, Digital Recording at 12:31–12:33 p.m.; see also Id. at 12:13–12:14 p.m.). Plaintiff's assertion that she was an employee of the White Earth Tribal Government is supported by documents she submitted in support of her Complaint, including her Internal Revenue Service W-2 Form, which indicated her employer was in fact the White Earth Reservation Tribal Council. (Plf.'s Ex. 1, [Docket No. 15-1], at 6).[3]

**A. Standard of Review**

"A court must dismiss an action over which it lacks subject matter jurisdiction." Pomerenke v. Bird, No. 12–cv–1757 (DSD/JJG), 2014 WL 30363, at *1 (D. Minn. Jan. 3, 2014) (citing Fed. R. Civ. P. 12(h)(3)). Rule 12(b)(1) of the Federal Rules of Civil Procedure provides that a party may move to dismiss a pleading for lack of subject matter jurisdiction.

"Sovereign immunity is a jurisdictional question[.]" Rupp v. Omaha Indian Tribe, 45 F. 3d 1241, 1244 (8th Cir. 1995). If Defendants enjoy sovereign immunity, the Court does not have jurisdiction to hear the claims plead against them. Id. Accordingly, motions to dismiss asserting sovereign immunity challenges are considered pursuant to Federal Rule of Civil Procedure 12(b)(1), which provides for the dismissal of a suit when the court lacks subject matter jurisdiction. Brown v. United States, 151 F. 3d 800, 804 (8th Cir. 1998).

There are two types of subject matter jurisdiction challenges. See, e.g., Osborn v. United States, 918 F.2d 724, 729 (8th Cir. 1990). One type of subject matter jurisdictional challenge requires the court to examine the face of the pleadings. See Id. at 729. In addressing such a facial sovereign immunity challenge to subject matter jurisdiction, a court is to accept all factual allegations in the pleadings as true, and it views them in the light most favorable to the

[3] While Plaintiff did assert that the White Earth Boys and Girls Club received a portion of its funding through a grant from the National Boys and Girls Club, Plaintiff also conceded that most grant money goes to the White Earth Tribal Government who then administers it to the White Earth Boys and Girls Club, but she was not aware if all grant money went first to the White Earth Tribe Government. (August 25, 2016, Motions Hearing, Digital Recording at 12:31–12:34 p.m.).

nonmoving party, as it would when ruling on a Rule 12(b)(6) motion. Cmty. Fin. Grp., Inc. v. Republic of Kenya, 663 F.3d 977, 980 (8th Cir. 2011) (citing Hastings v. Wilson, 516 F.3d 1055, 1058 (8th Cir. 2008)). The second type of challenge requires the Court to go beyond the pleadings to resolve a factual dispute necessary to determine whether the Court has jurisdiction. See, e.g., Osborn, 918 F.2d at 729. In ruling on this second type of fact-implicated challenge to subject matter jurisdiction, the Court is not limited in the manner that it would be if it considered matters beyond the pleadings in the context of a Rule 12(b)(6) motion to dismiss. Id. Rather, the Court is free to consider the pleadings, affidavits in support of and in opposition to the motion, and even hold an evidentiary hearing to take testimony. Id. In addition, the Court is not required to presume the truthfulness of the information in the non-moving party's documents and the existence of a dispute of material fact will not preclude the court from evaluating the merits of the jurisdictional claims. Id. at 730.

"Although pro se pleadings are to be construed liberally, pro se litigants are not excused from failing to comply with substantive and procedural law." Burgs v. Sissel, 745 F.2d 526, 528 (8th Cir. 1984).

**B. Analysis**

"It is well settled that the plaintiff bears the burden of establishing subject matter jurisdiction." Nucor Corp. v. Nebraska Public Power Dist., 891 F.2d 1343, 1346 (8th Cir. 1989).

The United States Supreme Court has long observed that Indian tribes are "distinct, independent political communities, retaining their original natural rights in matters of local self-government." Santa Clara Pueblo v. Martinez, 436 U.S. 49, 55 (1978) (internal quotation marks omitted). While "no longer possessed of the full attributes of sovereignty tribes," tribes retain the right to make their own law regarding internal matters, and to enforce that law in their own

forums. Id. at 55–56. Thus, "[a]s a matter of law, an Indian tribe is subject to suit only where Congress has authorized the suit or the tribe has waived its immunity." Kiowa Tribe of Oklahoma v. Mfg. Technologies, 523 U.S. 751, 753 (1998). In Santa Clara Pueblo, the United States Supreme Court reaffirmed its long-held view that, as it related to Indian tribes, "a waiver of sovereign immunity cannot be implied but must be unequivocally expressed." 436 U.S. at 55. Absent a showing that an Indian tribe has waived its sovereign immunity or that the U.S. Congress has authorized the suit, the Court lacks subject matter jurisdiction over claims against an Indian tribe or its agencies. Hagen v. Sisseton-Wahpeton Community College, 205 F.3d 1040, 1043 (8th Cir. 2000) (providing that sovereign immunity is a threshold jurisdictional issue).

A tribe's sovereign immunity extends to its agencies. Id. at 1043–44 (sovereign immunity extends to tribal college); Dillon v. Yankton Sioux Tribe Housing Auth., 144 F.3d 581, 583 (8th Cir. 1998) (sovereign immunity extends to tribal housing authority). However, to be considered an agency of an Indian tribe, the entity must "serve as an arm of the tribe and not as a mere business[.]" Hagen, 205 F.3d at 1043.

Upon the face of Plaintiff's Complaint, [Docket No. 4], and upon the assertions and admissions of the parties at the hearing, it is clear that the Defendants White Earth Human Resources, White Earth Boys and Girls Club, and White Earth Education Department are each an agency of the White Earth Tribal Government. As such, all Defendants are subject to suit only where Congress has authorized the suit or the tribe has unequivocally expressed a waiver of its immunity. Kiowa Tribe of Oklahoma, 523 U.S. at 753; Santa Clara Pueblo, 436 U.S. at 55.

The Court reviews each of the legal theories upon which Plaintiff bases her claims below.

**i. Americans With Disabilities Act**

Plaintiff alleges that she was "fired in direct violation of the Americans with Disabilities Act of 1990." (Compl. [Docket No. 4]).

Pursuant to the Americans with Disabilities Act ("ADA"), an employer may not "discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions and privileges of employment." 42 U.S.C. § 12112(a). Plaintiff's claim under the ADA fails for at least two reasons.

First, Plaintiff presents no evidence that Defendants have waived their sovereign immunity from suit, and upon its own review, the Court finds no evidence in the record that Defendants have waived their sovereign immunity from suit. Santa Clara Pueblo, 436 U.S. at 55.[4] Therefore, the Court lacks subject matter jurisdiction as to Plaintiff's claim against Defendants under the ADA.

Second, even if it is assumed merely for the sake of argument that Defendants had waived their sovereign immunity from suit, the ADA specifically excludes Indian tribes from the definitions of employers who must comply with the ADA. The ADA expressly states that "[t]he term employer does not include . . . an Indian tribe[.]" 42 U.SC. § 12111(5)(B). Courts in this District have held that tribal agencies, such as the Defendants in the present case, fall squarely within the Indian tribe exception in the ADA. See, e.g., Reuer v. Grand Casino Hinckley, No. 9-cv-1798 (MJD/RLE), 2010 WL 3384993, at *10–13 (D. Minn. July 12, 2010), report and recommendation adopted, 2010 WL 3385058 (D. Minn. Aug. 24, 2010). As the terms of the

[4] The only waiver of sovereign immunity by the Defendants arguably evident on the present record is a limited one where a Tribal Council employee may seek review of their termination in the White Earth Tribal Court, but only after first appearing before a tribal administrative review board. See White Earth Human Resources Policy 311. Even liberally construing this evidence, the Court cannot say that the Defendants have unequivocally expressed their waiver of sovereign immunity for all purposes before this Court.

ADA exempt Defendants from its regulations, the Defendants are beyond the jurisdictional reach of the ADA, and as such cannot be subject to suit under an ADA claim.

**ii. Rehabilitation Act**

Next, Plaintiff alleges she was fired by Defendants in violation of the Rehabilitation Act of 1973 ("RA"). (Compl. [Docket No. 4]).

Similar to the ADA, the RA prohibits discrimination against any "otherwise qualified individual with a disability . . . solely by reason of her or his disability." 29 U.S.C. § 794(a). Plaintiff's claim under the RA fails for at least two reasons.

First, Plaintiff again presents no evidence that Defendants have waived their sovereign immunity from suit, and upon its own review, the Court finds no evidence in the record that Defendants have expressly waived their sovereign immunity from suit. See Santa Clara Pueblo, 436 U.S. at 55.[5] Further, the RA contains no provision in which Congress expressly abrogates Defendants' sovereign immunity. Sanderlin v. Seminole Tribe of Florida, 243 F.3d 1282, 1286 (11th Cir. 2001). Therefore, the Court lacks subject matter jurisdiction as to Plaintiff's claim against Defendants under the RA.

Second, even again assuming arguendo that Defendants had waived their sovereign immunity from suit, the RA would not be applicable to Defendants based on the present record. The RA provides that "[n]o otherwise qualified individual with a disability . . . shall, solely by reasons of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . . ." 29 U.S.C. § 794(a). Plaintiff has failed to provide any evidence that Defendants

[5] See fn. 4, supra.

received federal financial assistance for the White Earth Boys and Girls club as required by the Rehabilitation Act.[6]

**iii. Claims Pursuant to Minnesota Statute 181.961**

Plaintiff also alleges Defendants were in violation of Minnesota statute 181.961 when they denied her "timely access to her personnel files prior to her [t]ermination [a]ppeal." (Compl [Docket No. 4]).

Minnesota statute 181.961 provides that "[u]pon written receipt by an employee, the employer shall provide the employee with an opportunity to review the employee's personnel record." Plaintiff's purported claim under 181.961, however, fails as a Minnesota state statute is not applicable to the actions of a tribal government or its agencies, such as Defendants. Moreover, Defendants enjoy sovereign immunity from such a suit.

As noted above, the United States Supreme Court has long observed that Indian tribes are "distinct, independent political communities, retaining their original natural rights in matters of local self-government." Santa Clara Pueblo, 436 U.S. at 55. As such, the White Earth Band Tribal Government and the Minnesota state government are separate sovereigns, see e.g., Id.; and the general rule is that one sovereign cannot compel enforcement of their law on another sovereign's officers. See Printz v. United States, 521 U.S. 898, 917, (1997). "Not only is there no general duty for a tribal government to enforce a state government's laws, but our federal system in many instances even prohibits tribal government officers from enforcing state and federal laws." Doe v. Piper, No. 15-cv-2639 (JRT/SER), 2016 WL 755619, at *11 (D. Minn. Feb. 25, 2016). The state of Minnesota cannot dictate the actions of the White Earth Tribal Government or its agencies. Therefore, Defendants were under no obligation to comply with or require compliance with Minnesota statute 181.961.

[6] See fn. 3, supra.

Additionally, as previously discussed, Plaintiff presents no evidence that Defendants have, in any event, waived their sovereign immunity from suit, and upon its own review, the Court finds no evidence in the record that Defendants have expressly waived their sovereign immunity from suit related to Plaintiff's putative claim under Minnesota statute 181.961. See gen., Santa Clara Pueblo, 436 U.S. at 55. Further, as the statute at issue is a state statute, by its very nature, it cannot contain a provision by which the U.S. Congress has expressly abrogated Defendants' sovereign immunity.

Therefore, the Court lacks subject matter jurisdiction as to Plaintiff's claim against Defendants under Minnesota statute 181.961.

**iv. Claims Under Fifth and Fourteenth Amendment of the United States Constitution**

Plaintiff only generally alleges Defendants deprived her of her "civil rights under the Equal Protection and Due Process clauses of the" Fifth and Fourteenth Amendments to the United States Constitution. (Compl. [Docket No. 4]).

Plaintiff's claims under the Fifth and Fourteenth Amendment must fail for at least two reasons.

First, Plaintiff has again failed to show that Defendants have expressly waived their sovereign immunity from suit in this Court as to her claims under the Fifth and Fourteenth Amendment. The Fifth and Fourteenth Amendment also do not contain a provision expressly abrogating the sovereign immunity of Defendants. As such, Defendants maintain their sovereign immunity from suit as it applies to Plaintiff's general claims under the Fifth and Fourteenth Amendments.

In addition, the Fifth and Fourteenth Amendments of the United States Constitution do not apply to Defendants as agencies of a Tribal government. By their terms, the Equal Protection

and Due Process Clauses of the Fourteenth Amendment apply only to the actions of the states, not Tribal governments. U.S. Const. amend. XIV, § 1 ("nor shall any state deprive any person of life, liberty, or property, without due process of law") (emphasis added). The Fifth Amendment of the United States Constitution equally does not apply to Tribal governments. United States v. Cavanaugh, 643 F.3d 592, 595 (8th Cir. 2011); Talton v. Mayes, 163 U.S. 376, 384 (1896) (holding that the Fifth Amendment does not "operat[e] upon" the Indian tribes). These clauses "do not apply to restrict the actions of Indian tribes as separate, quasi-sovereign bodies." Cavanaugh, 643 F.3d at 595 (citing Santa Clara Pueblo, 436 U.S. at 56). This premise is "one of the most basic tenets of American constitutional law." Twin Cities Chippewa Tribal Council v. Minn. Chippewa Tribe, 370 F.2d 529, 533 (8th Cir. 1967); see Talton, 163 U.S. at 384.

As the Defendants cannot be subject to suit under the Fifth and Fourteenth Amendments of the United States Constitution, the Court lacks subject matter jurisdiction regarding Plaintiff's general allegations under those Amendments.

**v. Claims Under the Civil Rights Act of 1964**

Plaintiff also alleges that she "was fired in violation of [the] Civil Rights Act of 1964," and that she wished to pursue that violation under "Section 102 and 103 of the Civil Rights Act of 1991." (Compl. [Docket No. 4]).

The Civil Rights Act of 1964 provides in part that "[i]t shall be an unlawful employment practice for an employer . . . to discriminate against any individual . . . because of such individual's race, color, religion, sex, or national origin[.]" 42 U.S.C. §2000e-2. Plaintiff's claim that she was fired by Defendants in violation of the Civil Rights Act of 1964 fails for at least two reasons.

First, Defendants are immune from suit under the Civil Rights Act of 1964 under the doctrine of sovereign immunity. Plaintiff has provided no evidence that Defendants have expressly waived their immunity, and Plaintiff has failed to identify a section of the Civil Rights Act in which the U.S. Congress expressly abrogated the sovereign immunity enjoyed by Tribal governments or their agencies. As such, Defendants are immune from suit regarding Plaintiff's claims under the Civil Rights Act.

Additionally, continuing to assume only for the sake of argument that Defendants had waived sovereign immunity, which they have not, the Civil Rights Act expressly excludes from its application Indian tribes. As noted above, the Act prevents "employers" from discriminating. However, the Act expressly defines "employer" as excluding "an Indian tribe." 42 U.S.C. 2000e(b) ("[t]he term 'employer' . . . does not include . . . an Indian tribe"). Courts have consistently held that an Indian Tribe is not subject to suit under Title VII, according to that enactment's express provisions. See, e.g., Morton v. Mancari, 417 U.S. 535, 545 n. 19 (1974); Dille v. Council of Energy Resource Tribes, 801 F.2d 373, 375–76 (10th Cir. 1986); In re Prairie Island Dakota Sioux, 21 F.3d 302, 304 (8th Cir. 1994); Ferguson v. SMSC Gaming Enterprise, 475 F. Supp. 2d 929, 931 (D. Minn. 2007); Tenney v. Iowa Tribe of Kansas, 243 F. Supp. 2d 1196, 1198 (D. Kan. 2003). It was acknowledged at the motions hearing before this Court that the Defendants are all agencies of the White Earth Tribal Government. As such, Defendants are not employers as defined by the Civil Rights Act of 1964.

Accordingly, Plaintiff's claims under Civil Rights Act of 1964 cannot be asserted against Defendants, and therefore, the Court lacks subject matter jurisdiction as to Plaintiff claim under the Civil Rights Act.

**vi. Claims Under the Indian Civil Rights Act**

Plaintiff also alleges that Defendants violated her civil rights under the Equal Protection and Due Process clauses of the Indian Civil Rights Act. (Compl. [Docket No. 4]).

The Indian Civil Rights Act provides in relevant part that "[n]o Indian tribe in exercising powers of self-government shall . . . deny to any person within its jurisdiction the equal protection of its law or deprive any person of liberty or property without due process of law[.]" 25 U.S.C. § 1302(a)(8). Plaintiff's claims under the Indian Civil Rights Act also fail here for at least two reasons.

First, Defendants have not waived their sovereign immunity from suit as would be required for Plaintiff to be subject to suit in this Court under the Indian Civil Rights Act, and there is no provision in the Indian Civil Rights Act which operates to demonstrate Congress' intention to expressly abrogate Defendants' sovereign immunity from suit. See Santa Clara Pueblo, 436 U.S. at 72. As such, Defendants enjoy sovereign immunity from Plaintiff's claims under the Indian Civil Rights Act.

Even to the extent it might be assumed arguendo that the Defendants had waived their sovereign immunity for a claim of violation of the Indian Civil Rights Act, that waiver would still only be to the extent the Indian Civil Rights Act provides for a private civil right of action, which it does not. See Id. The Supreme Court has explicitly held that a writ of habeas corpus is the only federal remedy available under the Indian Civil Rights Act, and that the Indian Civil Rights Act "does not . . . authorize actions for declaratory or injunctive relief against either the tribe or its officers." Santa Clara Pueblo, 436 U.S. at 72.

Therefore, the Court lacks subject matter jurisdiction as to Plaintiff's purported claim against Defendants under the Indian Civil Rights Act.

**vii. Claims Under the Tribal Constitutions**

Plaintiff also alleges that Defendants deprived her of her civil rights under the Revised Constitution of the Minnesota Chippewa Tribe and the White Earth Constitution. (Compl. [Docket No. 4]).[7] Plaintiff does not assert a specific argument as to how Defendants deprived her of her rights under Revised Constitution of the Minnesota Chippewa Tribe. (See Id.). The Court, however, in an abundance of caution, will considerer Plaintiff's allegation that she was deprived of her rights under the Revised Constitution of the Minnesota Chippewa Tribe.

Plaintiff has not herself provided the Revised Constitution of the Minnesota Chippewa Tribe for this Court's review. Court "generally may not consider materials outside the pleading when deciding a motion . . . for judgment on the pleadings." Greenman v. Jessen, 787 F.3d 882, 887 (8th Cir. 2015) (citing Porous Media Corp. v. Pall Corp., 186 F.3d 1077, 1079 (8th Cir. 1999)). A court "may, however, consider some materials that are part of the public record or do not contradict the complaint[.]" Greenman, 787 F.3d at 887 (citing Porous Media Corp., 186 F.3d at 1079). Thus, a court "may consider the pleadings themselves, materials embraced by the pleadings, exhibits attached to the pleadings, and matters of public record." Mills v. City of Grand Forks, 614 F.3d 495, 498 (8th Cir. 2010) (citing Porous Media Corp., 186 F.3d at 1079). The Revised Constitution of the Minnesota Chippewa Tribe is available on the Minnesota Chippewa Tribe's website. As such, the Revised Constitution of the Minnesota Chippewa Tribe is a public document and a matter of public record. Accordingly, the Court may consider that constitution in evaluating Plaintiff's allegations.

---

[7] The Revised Constitution of the Minnesota Chippewa Tribe is also the current operative constitution for the White Earth Band of Ojibwe Indians. While the White Earth community has in recent years convened a constitutional convention, prepared a draft constitution for itself, and conducted a member referendum on the draft constitution, the draft constitution has not yet been submitted to and approved by the U.S. Department of Interior, Bureau of Indian Affairs.

A review of the Revised Constitution of the Minnesota Chippewa Tribe demonstrates that it does not contain a provision which provides for a private cause of action under which Plaintiff may bring claims against the present Defendants. Even assuming solely for the sake of argument that the Revised Constitution did provide for a private cause of action, a claim pursuant to that cause of action against Defendants would still require a waiver of Defendants' sovereign immunity before it could be pursued in this Court. The Courts review of the record and of the Revised Constitution of the Minnesota Chippewa Tribe does not provide any section by which an expressed and unequivocal waiver of Defendants' sovereign immunity has been made, and as previously noted, Plaintiff has provided no other evidence that Defendants have waived their sovereign immunity or that their immunity has been expressly abrogated by U.S. Congress for the purposes of the present case now before the Court. In the absence of an express waiver of their sovereign immunity, or an abrogation of that immunity by Congress, Defendants enjoy sovereign immunity from suit.

Therefore, the Court lacks subject matter jurisdiction as to Plaintiff's purported allegations against Defendants under the Revised Constitution of the Minnesota Chippewa Tribe.

**viii. Claims for Violations of 5 U.S.C. § 552a**

Lastly, Plaintiff asserts that Defendants were in violation of the Freedom of Information Act (FOIA) when they failed to provide her with a copy of her personnel file. (Compl. [Docket No. 4]) (citing 5 U.S.C. § 552a).

The Freedom of Information Act (FOIA) in relevant part provides that, subject to certain limitations, each agency that maintains a system of records shall, upon request, permit an individual to review his or her record and have a copy made of all or any portions of that record. 5 U.S.C. § 552a. However, FOIA defines "agency" to include "any executive department,

military department, Government corporation, Government controlled corporation, or other establishment in the executive branch of the Government (including the Executive Office of the President), or any independent regulatory agency[.]" 5 U.S.C. § 552(f). This definition does not include Indian tribes, and as such is not applicable to the present Defendants. Courts have continually held that the Freedom of Information Act applies only to records held by a federal government agency. See, e.g., Shakopee Mdewakanton Sioux (Dakota) Community v. Hatch, No. 1-cv-1737 (ADM/AJB), 2002 WL 1364113, at *6 (D. Minn. June 20, 2002).

As such, the Plaintiff's claim under the Freedom of Information Act (FOIA) is not applicable to Defendants, and therefore, Plaintiff has failed to show the Court has subject matter jurisdiction over Defendants as to Plaintiff's FOIA claims.

Therefore, for all the foregoing reasons, the Court recommends Defendants' Motion to Dismiss, [Docket No. 8], be **GRANTED**.

## III. CONCLUSION

Based on the foregoing reasons, all the files, records, and proceedings herein,

**IT IS HEREBY RECOMMENDED** that**:**

1. Defendants' Motion to Dismiss, [Docket No. 8], be **GRANTED**; and
2. Plaintiff's action be **DISMISSED** with prejudice.

Dated: October 7, 2016

s/Leo I. Brisbois
Leo I. Brisbois
U.S. MAGISTRATE JUDGE

## N O T I C E

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "A party may file and serve specific written objections to a magistrate judge's proposed findings and recommendation within 14 days after being served with a copy of the recommended disposition[.]" A party may respond to those objections within 14 days after being served a copy of the objections. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in LR 72.2(c).

**Under Advisement Date:** This Report and Recommendation will be considered under advisement 14 days from the date of its filing. If timely objections are filed, this Report and Recommendation will be considered under advisement from the earlier of: (1) 14 days after the objections are filed; or (2) from the date a timely response is filed.